The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Dillard and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * *
All objections raised during the depositions taken in this case are ruled upon in accordance with the law and this Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on the relevant dates and an employment relationship existed between defendant-employer and plaintiff.
2. Plaintiff was paid temporary total disability from 4 November 1991 to 18 November 1991 and from 22 January 1992 to 7 April 1992.
3. The Industrial Commission Form 21 entered on 27 November 1991 and approved on 27 December 1991 for a head contusion on 22 October 1991 is incorporated into the record.
4. The Industrial Commission Form 26 entered on 23 January 1992 and approved 6 February 1992 incorporated into the record.
5. The Industrial Commission Form 26 entered on 15 April 1992 and approved on 29 April 1992 is incorporated into the record.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. On 21 October 1991 plaintiff worked in the card room at the textile plant of R.L. Stowe Mills, Incorporated where she operated nine combers. In her position as a comber plaintiff had to lift the lid of each of comber with the lids weighing approximately sixty to eighty (60-80) pounds. On said date plaintiff sustained an admittedly compensable injury by accident when the lid of a comber fell striking the top of plaintiff's head. As a result of the blow, plaintiff sustained injuries to both her head and back.
2. Following her injury, plaintiff's complained of pain and of feeling light headed. Plaintiff informed defendant-employer of her symptoms and that she required medical attention. She was initially treated by Dr. Ladd who returned plaintiff to light duty work on 22 October 1991.
3. Plaintiff was subsequently treated by Dr. Paul V. Tuttle, III, for symptoms of pain in her head, neck, and back, burning pain in her hands, speech difficulty, loss of ability to concentrate and memory loss. Following his examination Dr. Tuttle diagnosed plaintiff as having a cervical strain which was causing her neck pain.
4. Plaintiff was removed from work and paid temporary total disability compensation from 4 November 1991 to 18 November 1991. On 19 November 1991 plaintiff attempted to return to light duty work for defendant-employer. Two days after her return to the light duty job plaintiff began to experience a burning pain in her arms and hands. Plaintiff continued to perform the light duty job until Dr. Anthony Wheeler, a partner of Dr. Tuttle, removed her from work and benefits were resumed on 22 January 1992 continuing to 7 April 1992.
5. Dr. Wheeler continued to treat plaintiff through 3 April 1992 and diagnosed her as having post-traumatic cervical segmental and soft tissue dysfunction with post-traumatic tension headaches and possible post-concussive syndrome. In his opinion, plaintiff reached maximum medical improvement on 3 April 1992 and gave her a five (5) percent permanent partial disability rating for her back and referred her to physical therapy. Dr. Wheeler released plaintiff to return to light duty work with gradual progressive return to full duty over a six-week period.
6. For plaintiff, physical therapy was not a positive experience as she was pressured by her therapist. Plaintiff was accused of malingering and told that the Insurance Company might not continue to fund the program. Because she felt as though she had to, due to the pressure from physical therapist, plaintiff returned to her former position as a comber on a full time basis in May of 1992.
7. Mr. John Robert Bell, Jr., plaintiff's husband observed changes in his wife's condition and abilities following her injury by accident. While plaintiff's pain has increased her ability to concentrate and remember has decreased. Following her attempted return in the spring of 1992, by day's end plaintiff could hardly move due to the severity of her neck, back and head pain. Once Mr. Bell got her home plaintiff was forced to seek bed rest before doing anything else.
8. During the period when plaintiff returned to work she complained about her inability to meet production standards because of her continued problems. Although she may not have complained to her supervisors about each and every ailment she was experiencing, plaintiff's testimony regarding her ongoing back problems as well as her continued emotional and cognitive problems is found by the Full Commission to have been credible.
9. From May 1992 until 1 October 1992 plaintiff worked full-time in her former position with defendant-employer as a comber. Nonetheless, as the result of her injury by accident and continued physical problems from the time plaintiff returned to her former position she never again met the required production levels. When her condition did not improve and her productivity continued to decline plaintiff was terminated by defendant-employer for failure to meet the company's production requirements on 1 October 1992.
10. On 24 June 1992 plaintiff sought a second opinion from Dr. Daniel Hamaty, a specialist in internal and pain medicine. Dr. Hamaty diagnosed plaintiff as experiencing the ongoing effects of post-traumatic headaches and of a closed head injury. In addition to the five (5%) percent rating Dr. Wheeler gave for plaintiff's spine, Dr. Hamaty found that plaintiff had a fifteen (15%) percent permanent partial disability rating based on myofascial pain in her upper extremities.
11. Plaintiff was then examined by Dr. Jeffery Ewert, a clinical neuropsychologist. Dr. Ewert performed an thorough battery of attention and memory tests. He found plaintiff to be disoriented about the day of the month and where and who she worked for. Plaintiff's attention, ability to concentrate, long term visual memory and information processing speed proved to be greatly impaired. Plaintiff's results for verbal learning, fine motor skills and visual scanning in the left and right fields also showed her to be severely impaired. On a problem solving and general motor skills tests plaintiff was moderately impaired. Tests also revealed to Dr. Ewart that plaintiff was experiencing severe depression and perceived herself as having a lot of neurological type problems.
12. In Dr. Ewert's opinion, the results from tests he conducted were consistent with a closed head injury caused by the accident at work on 21 October 1991. Dr. Ewert believed that plaintiff's condition required additional and continued treatment, including psychotherapy and cognitive retraining.
13. Regarding Dr. Hamaty's diagnosis, Dr. Wheeler admitted that it was possible that the type of emotional, mental and physical impairment caused by a closed head injury would not have been resolved by the time he released plaintiff from his care. Dr. Wheeler did not perform the type of intensive tests Dr. Ewart performed yet still concluded that plaintiff's complaints were not attributable to her compensable injury of 21 October 1991.
14. The Full Commission places more weight on the testimony of Drs. Hamaty and Ewart than that of Dr. Wheeler.
15. As the result of plaintiff's 21 October 1991 injury by accident she has been unable to earn any wages in former position as a comber with defendant-employer or in any other employment from 1 October 1992 and continuing.
16. Plaintiff's average weekly wage on the relevant dates was $284.00 yielding a compensation rate of $189.42.
17. Subsequent to her termination in October of 1992 plaintiff received unemployment benefits until some time in July of 1993.
* * * * * * * * * * * * *
Based on the foregoing findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage on the relevant dates was $284.00 yielding a compensation rate of $189.42. G.S. 97-2(5).
2. As the result of her 21 October 1991 injury by accident plaintiff is entitled to be paid by defendant temporary total disability compensation at the rate of $189.42 per week from 1 October 1992 and continuing until such time as plaintiff obtains suitable employment or defendant receives further order from the Commission, subject to the credit and attorney's fee hereinafter approved. G.S. § 97-29.
3. Defendant is entitled to a credit against the compensation awarded above for the period plaintiff received unemployment benefits beginning in October of 1992 and continuing through July of 1993. G.S. § 97-42.1.
4. As the result of her 21 October 1991 injury by accident plaintiff is entitled to have defendant pay for all reasonable medical expenses incurred or to be incurred including continued treatment recommended by Drs. Hamaty and Ewart. G.S. § 97-25.
5. An attorney's fee in the amount of twenty-five (25%) percent is approved for counsel for plaintiff.
* * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay to plaintiff temporary total disability compensation at the rate of $189.42 per week from 1 October 1992 and continuing until such time as plaintiff obtains suitable employment or defendant receives further order from the Commission. The amount of said compensation that has accrued shall be paid to plaintiff in one lump sum. These amounts are subject to the approved credit and attorney's fee.
2. Defendant shall pay all reasonable medical expenses incurred or to be incurred by plaintiff as the result of her 21 October 1991 injury by accident including continued treatment recommended by Drs. Hamaty and Ewart.
3. A reasonable attorney's fee in the amount of twenty-five (25) percent of the compensation herein awarded is hereby approved for plaintiff's counsel with said fee being deducted from the accrued compensation and paid directly to counsel for plaintiff with counsel for plaintiff receiving every fourth check of compensation payable to plaintiff pursuant to the above award thereafter.
4. Defendant shall pay the costs.
 S/ __________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ COY M. VANCE COMMISSIONER
S/ __________________ WILLIAM L. HAIGH CHIEF DEPUTY COMMISSIONER